HENRY W. WARD, APPELLANT, *v.* ELISHA RUCKMAN, RESPONDENT.

*Master's Interest—No Special Value.*

The doctrine that the owning of a share in a vessel by the Master or Captain thereof, constitutes such share one of special value and authority as the "sailing master's interest or share," repudiated.

There is no such distinction as to the value of shares, whether owned by the Captain or citizen.

*I. T. Williams* for Appellant.

*G. Dean* for Respondent.

DAVIES, CH.J.—This action is brought to recover damages against the Defendant, for depriving the Plaintiff of the right claimed by him to sail and navigate, as captain, the schooner Ney. It appeared upon the trial, that in January, 1856, the Defendant and one William De Groot, were the owners of said schooner, the Defendant owning three-fourths parts thereof, and said De Groot owning the remaining fourth part thereof. That De Groot at the time was the captain of said schooner, and had sailed her as such. That the Defendant applied to the Plaintiff to take charge of the schooner as such captain, to which the Plaintiff replied that he would not sail the vessel without having an interest in her, for the reason that he should be liable to be turned out at any moment. The Defendant then informed him that he could purchase Captain De Groot's interest, and, on application to De Groot, he agreed to take $2,500 for his one-quarter. The Plaintiff testified that when he bought this quarter in January, 1856, the vessel was worth $10,000, exclusive of the master's interest. He also testified that there was nothing said between the Defendant and himself as to how long he was to sail the vessel on shares, nor when the contract was to terminate, but witness supposed as long as they both kept her. The Plaintiff put in evidence the bill of sale from De Groot to himself, from which it appeared that De Groot sold to him "one-quarter of said schooner or vessel, together with one-quarter the masts, bowsprit, sails, boat,

anchors, cables, and all other necessaries thereunto appertaining or belonging." The enrolment of the vessel set out in the bill of sale, recited the facts that the Defendant owned three-fourths of the schooner, and that De Groot owned one-fourth, and that they were the sole owners of said vessel, and that De Groot was then the master thereof. It appeared, upon the trial, that various witnesses testified that where a master owned an interest in a sailing vessel, it was known and called the sailing interest.

It was generally understood, that when a captain buys a master's interest in a vessel, it is worth more than without such interest—that a master's or sailing interest is sometimes worth fifty per cent. more than a citizen's interest, sometimes not worth more than from twenty-five to thirty per cent. The witnesses meant by this, that the privilege of being captain of the vessel, which privilege they supposed inhered or attached to any share of a vessel when owned by a captain, was worth a third more than a mere citizen's interest. Upon the Plaintiff resting his case, the Defendant moved to dismiss the complaint on the ground that the action would not lie, it not appearing that the vessel had been sold or destroyed by the Defendant.

The Plaintiff's counsel asked the Court to submit the case to the jury upon the question of damages, insisting—

1. That the Plaintiff owned a sailing or master's interest in the vessel, and that the Defendant had wrongfully deprived him thereof.

2. That the Plaintiff's interest in the vessel under the proof was an entirety, and that the Defendant had no joint or interest in common with him in his quarter of the vessel, that being the sailing or master's interest, the Defendant owning no such interest in the remaining three-quarters of the vessel.

3. That the Plaintiff had owned the privilege of sailing the vessel as captain and master thereof, and that having been deprived of the exercise of such privilege by the wrongful act of the Defendant, he was entitled to damages or indemnity therefor.

4. That in any view of the case, the Plaintiff was entitled to recover a sum equal to the difference between the value of a sail-

ing or master's interest in one-fourth of said vessel, and the value of a citizen's interest in such one-fourth, if the jury should be of opinion upon the proof that any difference existed in the value of such respective interest. The Court overruled said questions, and nonsuited the Plaintiff, and gave judgment for the Defendant, which on appeal was affirmed at the General Term.

The foundation of the Plaintiff's right of recovery depends upon his establishing his first proposition, viz., that the Plaintiff owned a sailing or master's interest in the vessel.

There are several conclusive reasons which forbid our assenting to the soundness of this claim :

1. It is not apparent that De Groot had any such interest himself. He did not claim any such interest, and did not assume to sell and convey any such interest to this Plaintiff. His bill of sale, to which we must resort to ascertain what De Groot sold and what the Plaintiff purchased, makes no mention or reference to any such interest. It conveys only the one-quarter part of the schooner, her tackle and apparel, and the Plaintiff himself says he only paid the value of one-quarter part of the schooner, viz., $2,500, the whole being worth $10,000. Neither did he pay then anything for any such interest, and if De Groot possessed or owned any such interest he did not assume to sell any such interest, and no such interest was sold and conveyed to this Plaintiff. The Plaintiff claims such interest by virtue of his purchase from De Groot, but the muniments of his title show that no such interest was sold or assumed to be sold to him.

2. I have looked in vain at all the authorities referred to, and text-books accessible to me, and in none do I find any such interest mentioned or referred to ; I find no allusion to any such interest, or that a master, who is a part owner of a vessel, has any such interest which he can sell and dispose of. If a master has such an interest attached to his share in the vessel, then, if it be capable of sale and disposition by him, and goes with his share as appurtenant thereto, it follows that he can by a sale of his share, however small soever it be, appoint a master of the vessel, in hostility to the wishes of all the owners, and greatly to their

detriment. If the doctrine contended for be true, that a majority of the owners cannot change the captain or master at their pleasure, it would necessarily follow, that a perpetual captain or master might have the control of the vessel, in hostility to them.

But another serious difficulty will arise from the maintenance of this principle.

If the share of one captain or master was in having this sailing interest, how will it be if several captains or masters become the owners of shares in the same vessel?

Which having this interest is to take command to the exclusion of the others? If it inheres or attaches to one, it must to all. And again, suppose that in the present case De Groot had subdivided this quarter into four parts, and sold a quarter part to four different captains or masters, which, or would all have had a sailing interest, or would each have had a quarter part of a sailing interest? In either event, which would have been entitled to the command of the vessel, and which to have maintained actions against the other owners for not having the command awarded to them? These considerations would appear to determine that no such intangible interest can exist in the ownership of a part or share of a vessel, and that the owners must necessarily own parts or shares of equal value, and with equal rights and privileges, and that it is utterly impracticable that a permanent right to command the ship should be attached to any particular share. This right certainly cannot spring from the circumstance, that, at some point of time, the ownership of a share in the vessel was united in the same power with the captain or master.

It would not be competent for the owners of the other shares to consent that a particular share should forever have the right to command the vessel; much less can that right arise when such owners do not consent. Card v. Hope (2 Barn. & Cres. 661), is a strong case in affirmance of this doctrine. Card & Cannan being the owners of nine-sixteenth parts of the ship Herefordshire, entered into a covenant with one Hope, whereby they agreed to sell him two-sixteenth parts of said

ship, and that Hope should be appointed to the command of the ship, and that Card & Cannan should continue to be the managing owners.

It was further agreed that in case Hope, from ill health or other cause, should retire from the command, Card should be at liberty to appoint his successor upon such terms as should be approved of by Hope or his executors; and in case Card should decline to appoint such successor, then Hope or his executors should be permitted to appoint in his stead a fit and proper person to command the ship, and that the person so appointed should be entitled to all the privileges which Hope by said covenant was entitled to in right of such command. Lord Tenterden, in delivering the opinion of the Court, said: "It is impossible to read this deed without seeing that it is a bargain for a profit to be derived to the Plaintiffs from the appointment of the Defendant or his nominee to the command, the profit being either a greater price for the shares sold, or the continuance of the management and other powers and authorities in themselves, or partaking probably of both. And we are of opinion that such a contract is void, as being contrary to the interests of the charterers and of the other owners." He further observed: "It is a part of our national policy to give every encouragement to the equipment and employment of ships. Upon this consideration the law enables a majority of the part owners (under guards, indeed, to the interest of the minority, peculiar to itself) to employ their ship even against the will of the minority, that the ship may not remain unemployed. A power of employment vested in the majority seems to import a power of appointing officers, and in practice the majority certainly exercise that power. But such a power carries with it a duty—the duty of exercising a free and impartial judgment in the choice of every person who is to be entrusted with the management of the outfit, and with the navigation of the ship, *ut dentur digniori ;* and any contract which is calculated to have the effect of fettering the judgment, and of binding the party to concur in the nomination of particular persons, at the peril of an action, is a violation of

duty. The violation of duty becomes greater and more odious if the contract be founded on motives of peculiar gain and advantage to the contractors, all the part owners ought to share ratably in every profit that may be made of the ship. And if such contracts could be allowed by law, they must operate as a discouragement to persons to become part owners of ships. The duty, however, is owing not only to the charterers and other part owners of a ship, but also to all whose life or property may be embarked in her. And, consequently, a violation of the duty is contrary not only to the interest of the charterers and part owners, but also to another most important object, namely, the protection and safety of the lives and property embarked on the sea." These observations of this eminent judge are very pertinent to the case now under consideration, for a right is claimed here which it was in that case held unlawful should exist and be exercised by contract.

It cannot be successfully contended, that this Plaintiff possesses the right to command this schooner more securely than he would have done if it had been conferred by express contract.

To illustrate, suppose all · the owners of this schooner had entered into a covenant with De Groot, that he, as owner of his quarter share, should have the command of the schooner, and that the same right should be enjoyed by his assignee. This is certainly putting the Plaintiff's claim in the strongest and most favorable light for him. Yet we see such an arrangement must be condemned, for reasons and considerations which are unanswerable and imperative. I think the learned counsel is mistaken in the supposition that there is any interest known in the law as a sailing interest, arising from the fact that the ownership of a share in a vessel, and the command thereof, are united in the same person. My researches have not enabled me to find a case where any such interest has been recognized, and protected and enforced ; much less can I find, that in any instance has such interest been the subject of sale and transfer, and the vendee held, by virtue of such purchase, entitled to the command of the vessel, in opposition to the wishes of a majority in interest of the owners. If this claim be sound, then it follows, logically, that any one purchasing

12

a master's sailing interest (if such a thing has an existence), becomes thereby, *ipso facto*, master of the ship or vessel, and has a vested right to take the command of her; and this result would obtain, how small soever be the share to which this right inhered or attached. Such a right necessarily deprives all the other owners of any voice or control in the management of their property, and subjects it to the casualty of falling into the hands of the most untrustworthy and irresponsible. A person might, by the purchase of an insignificant share or interest in a vessel, assume the command thereof, in hostility to the wishes of all the other owners. If the purchase of a share in a vessel possessing this right vests in the vendee the right to command the ship, as is contended in the case at bar, then, as the master cannot be divested of that right and deprived of the command by a majority of the owners—as is also contended for—and cannot be removed by a Court of Admiralty, except on payment to him of the value thereof, or the damages which he may sustain by deprivation of the command—it is easy to see that few, if any, will be tempted to embark their property in enterprises over which they can have no control, and which will be subject to such grave embarrassments.

The theory of the learned counsel for the Plaintiff takes its origin in an assumption not warranted by the text-writers and the authorities, viz., that as a master, who is part owner of a vessel, cannot be deprived of the command by a majority in interest of the owners, he has a sailing or master's interest, arising from such ownership, of value, and of which he cannot be divested without his consent. It is seen that if the majority of owners can change the command of the vessel at their pleasure, then such an interest is a myth.

A very careful examination of all the authorities within my reach, has satisfied me that the true rule is, that in all cases the majority in interest of the owners has the right to control the vessel in every particular. And if so, it conclusively follows that no such interest exists as a master's or sailing interest.

Story on Part., § 432, says: " The common law not only thus

gives to the majority in interest of the part owners the right and authority to employ the ship upon any proper voyage or adventure, but also confers upon the majority the right and authority, *in all cases*, to appoint the master and officers and crew of the ships, and to displace them at their pleasure, even although the master should be a part owner." And such, he says, is also the rule of the French Law; citing Boulay Paty, Droit Comm., tom. 1, tit. 3, § 5, p. 340. He proceeds to say that "this authority must be exercised by a free and impartial judgment in the choice of the master and officers and crew, and especially in the choice of the master;" and adds, that "any contract, therefore, made by some of the part owners only, which is calculated to have the effect of fettering their judgment, and of binding them to appoint, or to concur in the appointment of particular persons as masters and officers, is a violation of that duty."

He refers with decided approbation to the opinion of Lord Tenterden in Card *v.* Hope (*ubi supra*), and says : "Such a contract is, therefore, utterly void, as against public policy and the true interests of commerce and navigation." Again, in § 445, Judge Story says: "We have already had occasion to state that the majority in interest of the part owners have a right to appoint the master and officers of the ship. This right necessarily carries with it the right to displace and dispossess the master and other officers, when in authority or possession of the ship ; and it will make no difference, in this respect, whether the master or other officer be a part owner or not." And he adds : "However, when a Court of Admiralty is called upon to enforce this right, although it allows the authority to displace and dispossess to be exercised at the sole pleasure of the majority, if the master or other officer is a mere stranger, yet, if he is a part owner, the Court commonly requires some reasonable ground to be stated therefor;" citing the case of The New Draper, 4 Rob. Adm. Rep., p. 235 or 287, &c.

A remark by Sir William Scott in this case to the effect quoted, is the foundation of the doctrine now maintained, that the master, when he is a part owner, cannot be dispossessed by a ma-

jority of the owners in interest. That case will be hereafter adverted to. Flanders on Shipping, § 164, says : "The owners may dismiss the master at their pleasure ;" and adds, "Upon a general retainer for no particular voyage, the master may be dismissed at any time, without cause assigned, because the nature of his employment, upon that condition, is a mere agency, to be revoked at any time by the principal."

Mr. Curtis, in his valuable work on the rights and duties of merchant seamen, at page 164, cites this passage from the Code de Commerce : "That if the master dismissed is a part owner of the ship, he may renounce his interest and require the reimbursement of the capital which represents it." And Mr. Curtis adds : "From these evidences of the maritime law, it would seem that the owners have a right to remove the master, who is a part owner, at their own pleasure, paying him for his share of the vessel." And at page 165, Mr. Curtis says : "If he (the master) is removed without good cause, after an engagement for a particular voyage, I think they are bound to pay him damages for the loss of employment as master, and for any losses or liabilities he may have incurred by reason of his appointment." This qualification of the removal, after an engagement for a particular voyage, is significant, and shows that the breaking of that engagement is the foundation of the claim for damages, not the fact of removal. Boulay-Paty, in his work, Droit de Commerce, tom. i., p. 332, says : "But as the majority (by Art. 220 of the Commercial Code) is determined by a portion of interest in the ship exceeding the half of its value, if the master is part owner of more than a half, he cannot be dismissed, for, if he was not the master, he would have the sole right to name one.

"Indeed, the master may own in the ship either a part equal to, or a part which exceeds the half, or a portion less than a half.

"In the first case his position is irrevocable, because a majority cannot vote against him.

"In the second, no person is able to dispossess him, as no one other than himself has a portion which exceeds one-half of his interest.

" In the third case, the will of the other part owners can exclude him.

" Finally, as by the Art. 220, it is the will of the greatest number in interest which can decide, it is not necessary that there should be an unanimous vote to dismiss the captain; it is sufficient that it is the will of the majority." *

In the Scottish Admiralty it is also held that ship-owners may dismiss the master at any time, without cause assigned, and the majority may dismiss him in his character of master, even if he be a joint owner (Bell's Com., vol. i., 506, 508).

We will now proceed to the examination of the few cases where this question, as to the power of removal of the master who is a part owner, has arisen, and been adjudicated. In the case of The See-Reuter (1 Dod. 22), the Admiralty Court in England removed a master, and part owner, in compliance with the decree of the burgomasters and counsellors of the city of Rostock, in senate assembled, and in whom the admiralty jurisdiction of that city was vested, and which had directed the master to deliver up the ship. Sir W. Scott said : " In cases of ships belonging to British subjects, the Court has no hesitation in ordering possession to be delivered up on the application of a majority of the owners, without entering very minutely into the causes of dissatisfaction existing between them and the master." It is to be ob-

---

* Boulay-Paty says: "Mais comme la majorité d'après l'art. 220 les détermine par une portion d'intérêt dans le navire excédant la moitié de sa valeur, si le capitaine était copropriétaire pour plus de moitié, il ne pourrait être congédié, car s'il n'était pas le capitaine, il aurait droit seul de le nommer.

" En effet, le capitaine a, dans la propriété du navire, ou une partie égale, ou une portion qui excéde la moitié, ou une portion inférieure.

" Dans le premier cas, il devient de fait irrévocable parce qu'une majorité ne peut voter contre lui.

" Dans le seconde, personne ne peut le révoquer, puis qu' en lui seul existe une portion excédant la moitié d'intérêts.

" Dans le troisième, la volonté de son copropriétaire, suffit pour l'exclure.

" Enfin, comme par l'art. 220, c'est l'avis du plus nombre qui doit décider il n'est pas nécessaire qu'il fait concours unanime congédier le capitaine ; il suffit que la majorité soit de cet avis."

served that this was said in a case pending for the removal of a master, who was also part owner.

The case of Johan and Siegmund (1 Ed. Adm. Rep. 242) was a suit in Admiralty to change the possession of a foreign ship, on the application of fifteen-sixteenths of the shares of the ship, against the master and owner of the remaining one-sixteenth part. Sir W. Scott refused to interfere, on the ground that the Court had no jurisdiction in the case of a foreign ship. He observed: " If this were a British ship, there can be no doubt that, by the practice of this Court, it would, upon the application of a majority of the parties interested, proceed to dispossess the master, though a part owner, without minutely considering the merits or demerits of his conduct."

The case of The New Draper has already been referred to (*ubi supra*).

The suit was brought by the owners of nine-sixteenths of the vessel, against Walker, a part owner of seven-sixteenths, and also master of the vessel, for his removal, and a change of the possession. Sir W. Scott, in giving judgment, said : " The dispossession of a master is in its nature not an uncommon proceeding. All that the Court requires in cases where the master is not an owner, is that the majority of the proprietors should declare their disinclination to continue him in possession. In the case of a master and part owner, something more is required before the Court will proceed to dispossess a person who is also a proprietor in the vessel, and whose possession, therefore, the common law is, upon general principles, inclined to maintain."

The Court said the case was the common one of the majority of owners proceeding against another, in which the common rule of this Court must be pursued, and possession decreed to the owners representing the nine sixteenth parts.

This cannot, therefore, be rightfully cited as an authority, that the majority in interests have not the power to displace a master who is a part owner, nor for the position that a Court of Admiralty will not, on the application of such majority, remove a master who is a part owner, and put him out of possession, and place

the possession with the other owners. On the contrary, it is believed that it is an authority for the affirmation of both these propositions.

Judge Hopkinson, in the case of Montgomery *v.* Wharton (2 Pet. Ad. Rep. 397), justly says : "And however hard it may seem that the master should be subject to the caprice of his owners, as to his continuing in the command or not, he must consider it as one of the unavoidable inconveniences of his station, and in case of injury apply to the laws of his country for redress ; but much greater would the danger be to owners, and to commerce in general, if the appointment of a master should be irrevocable for the voyage. Whatever good opinion an owner may have of the master at the time of his appointment, he may find sufficient reason afterward to change his mind, and yet not be able to produce any legal proof of defection or inability ; and it would be an unreasonable hardship to compel an owner to continue, what was originally a voluntary trust, in the hands of a person of whom he has found subsequent reasons to believe that he may prove unfaithful or unskilful."

The same case is reported in 1 Dallas, 49, where the facts are stated to be, that the libellant, " Capt. Montgomery, was master and commander of the ship called the General Greene, designed for a voyage to Martinico. While the ship lay in the river a severe frost happened, which occasioned a great delay, and the owners thought proper to alter their plan. Differences then arose, and they dismissed Capt. Montgomery, and took the ship from him." The Court say : "As to the dismission of the captain, we are of opinion that, upon a general retainer for no particular voyage, the captain may be dismissed at any time, without cause assigned."

We deduce from these writers and these authorities this doctrine : that in all cases the majority in interest in the ownership of a vessel has the absolute right to employ who they will as masters, officers, and crew of the ship, and at their pleasure to displace them and employ others, whether the person so displaced be part owner or not.

That in the single instance of a master employed for a particular voyage, if the master be displaced without cause, he is entitled to recover the damages which he may sustain by reason of such wrongful dismissal and breach of contract. That a Court of Admiralty, in a case like that presented in the record, would have decreed the dismissal of this Plaintiff as master, and delivered the possession of the schooner to this Defendant. It follows from these considerations, that the Plaintiff did not possess any interest, called or known as a sailing or master's interest, and cannot, therefore, recover damages for being deprived of what he did not possess, and consequently could not lose.

The complaint was properly dismissed, and the judgment thereon for Defendant should be affirmed with costs.

Concurring : BOOKES, PARKER, HUNT, GROVER, and PORTER, JJ. Affirmed.

JOEL TIFFANY,
State Reporter.
