In the Matter of the Schooner Eliza B. Emory, etc.

*(District Court, D. New Jersey.   June 21, 1880.)*

1.  Part Owner—Sailing Right—Estoppel.—The part owner of a vessel is estopped by the attempted sale of a " sailing right," for which he has received a pecuniary consideration, from joining in an application for the removal without cause of the purchaser of such " sailing right."

Libel for Possession.

*S. H. Gray*, for libellants.

*H. R. Edmunds*, for respondents.

Nixon, D. J.   The libel is filed in this case by John B. Clayton, Charles Lawrence, Nicholas Clayton and Enoch B. Champion, owners of the seventeen thirty-seconds of the schooner Eliza B. Emory, for the possession of the said vessel. It alleges that when the libellants became the owners of their respective interests one Daniel R. Weeks was the master in charge, but desiring a change, and representing a majority of shares in said schooner, they appointed John B. Clayton master, to navigate and sail her, and applied to the said Weeks to deliver up the possession of the papers, and of the said vessel, which he refused to do.

The answer of Daniel R. Weeks, for himself and the remaining owners, does not deny that the libellants represent a majority of the shares in the ownership of the schooner, but claims that he ought not to be deprived of the command and management for the reason that in the month of April, 1874, John B. Clayton, one of the libellants, sold to him one-sixteenth part of said vessel for the price of $1,750, agreeing to give, and assuring the said Weeks that he should have, the right to sail and manage her if he would pay him (Clayton) the sum of $1,750 for said interest; that the value of the sixteenth did not exceed $500, and the excess, to-wit, $1,250, was demanded by Clayton, and paid by Weeks, for the privilege of sailing the vessel as master; that Weeks also agreed at the same time with the said Clayton to sail the schooner on what is known as "quarter shares," Clayton assuring him (Weeks)

v.3,no.4—16

that the owners would not allow a larger interest for sailing; that Weeks sailed the vessel on "quarter shares," but in fact another one-quarter interest was also paid to another of the libellants, Nicholas Clayton, a brother of John B. Clayton, who thus received from the earnings of the vessel, during the time she has been sailed and managed by the said Weeks, a sum of about $1,800, without the knowledge of the other owners, who were informed by the said John B. Clayton that Weeks was sailing on "half shares." The testimony shows that the libellant John B. Clayton was the master of the schooner from the time she was built, in 1861, until he sold out his interest to the present master, Weeks; that he was the owner of three thirty-seconds, and transferred at the same time two thirty-seconds to Weeks, and one thirty-second to Nicholas Clayton; that Weeks was then, and had been for some years before, the mate on board the said vessel, and that Clayton was allowed more than the real value of the shares on the agreement and promise that he should succeed to the position of master.

The proctor for the libellants claims that the owners of a majority of shares have the legal right to control the sailing and navigation of the vessel, and that there is no such thing known in law as a sailing or master's interest which is capable of being transferred from one person to another. I think the correctness of the propositions must be admitted, whatever the prevailing opinion or practice among owners may be to the contrary. It seems now to be generally understood that the minority must submit to the will of the majority in the management and control of the vessel; that it may employ or dismiss the master and crew at pleasure, and that no contract can be made between two part owners having minority interests, in reference to the employment of the master, which will bind other owners not parties to it. *The New Draper*, 1 C. Rob. 235; *Ward* v. *Ruckman*, 36 N. Y. 26; *The W. Bagaley*, 5 Wall. 377–406. But this is not quite the question which this case presents. If the libellants represented a majority of the shares of the vessel, without including John

B. Clayton's interest, I should not hesitate for a moment to order a decree in their favor for the possession. But it is necessary to count him in order to constitute the majority, and the question here is whether it is competent for one part owner to make an agreement or arrangement with another part owner, in regard to the management and control of the vessel, by which he may be afterwards estopped from claiming the management and control himself. It would not seem to be a difficult question to answer, if we may apply to a case in admiralty the same principles that are applicable to a suit in equity, and I do not see why we should not be allowed to do so. It is conceded that a court of admiralty is not a court of equity. It may, nevertheless, decide a cause submitted to its cognizance upon equitable principles. It has the capacity of a court of equity in the matter of granting relief and of restraining a wrong, when the rules of natural justice require a departure from strict legal relief. See Ben. Ad. § 329.

Looking at the pleadings and proofs, and disregarding all facts which are not set forth in the pleadings, I find that this is a cause of possession, and that it has been brought to dispossess a master, who is also part owner, without any allegations of incompetency, unskilfulness, or dishonesty, on his part, but solely upon the ground that the libellants represent a majority of the parties interested in the schooner, and, as such, have the right to her possession and control. I find that, aggregating their interests, all the libellants own seventeen thirty-seconds of the vessel, and that of these shares John B. Clayton, one of the libellants, is the owner of ten thirty-seconds. I find that some years ago the said Clayton, being a part owner and the master, made sale of his then interest to the respondent Weeks, whom the libellants are endeavoring to dispossess, and that he received from Weeks at the time a considerable sum of money for what the parties thought was the "*sailing right*" of Clayton. Should an admiralty court be made the instrument of aiding him to oust Weeks, and to resume possession and control, be-

cause he has been able to buy in enough of the outstanding shares of the vessel to give him once more a majority? I should not like to be a party to any such unconscionable endeavor, and am glad that I do not find any principle of law that requires me to be one. It is conceded that a sailing right is not transferable, and that no such right inhered to the shares which Clayton sold to Weeks. It may also be conceded that if a majority in interest of the owners, irrespective of Clayton, claimed the possession, the court would accede to their request, although no cause for the master's removal were assigned. In saying this I do not overlook the remark of Sir William Scott, in *The New Draper, supra,* that, "in the case of the master and part owner, something more is required" than the mere expression of the will of the majority in interest "before the court will proceed to dispossess a person who is also a proprietor of the vessel, and whose possession, therefore, the common law, upon general principles, is inclined to maintain." Nor do I forget that two of the ablest text writers of this country (Story and Parsons) have given their assent to the law as thus stated. See Story on Part. § 445, and Par. on Part. 562. But I think the later and better opinion is that the owners of the shares of a vessel are tenants in common, and not partners, and that the logical sequence of such tenancy is that the majority in interest may displace the master at their will without cause assigned. *Montgomery v. Henry,* 1 Dal. 49–52.

But, conceding these things, may not a part owner, by his act or conduct, forfeit his right to complain of the possession of another part owner? May he not, by the acceptance of a consideration, estop himself from the exercise of his undisputed right, under ordinary circumstances, to take possession and control of a vessel from the person who paid him the consideration for such possession and control? Although the doctrine of estoppel ordinarily rests upon the ground that the law will not permit a party to profit by his own fraud, is there not a class of cases where a person, wholly innocent in a moral point of view, may be bound by his acts and sayings, where,

if he be not bound, he will be permitted to cast an injury upon some one as innocent as he, but who has been misled by a confidence in what was said or done to him with the intent that he should rely upon it? Parsons on Con. 801. It may be asked, as it was at the hearing, how can one be estopped by a contract which is void? The court enforces no contract, and does not seek to do so. It simply says to one of the part owners of a vessel: "You have placed yourself in such a position, in the performance of an illegal act, that it is inequitable to. allow you to repudiate your action, and to do something contrary to it, to the injury of another. It is true that you had no 'sailing right' in the schooner which you could sell, but you made one of the subordinates, employed by you in navigating the vessel, believe that you had, and so induced him to pay you a liberal sum of money for the privilege of becoming master. You prefer no complaint that he does not faithfully perform his duties, but, with his money still in your pocket, you claim the active aid of the court in dispossessessing him and restoring you, because you have voluntarily purchased, or otherwise obtained, the control of enough shares to enable you to represent the majority interest of the ownership."

I must hold that until the majority in interest of the owners, without including Clayton, join in the application, there should be no decree for the libellants, and that the present libel be dismissed, with costs.